**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 8, 2019**

# In the Court of Appeals of Georgia

A18A1865. DANIELS v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Kareem Daniels was convicted of robbery by force. He appeals, arguing that the trial court erred in not allowing him to impeach the victim with a prior inconsistent statement, that the state knowingly failed to correct false testimony from the victim, and that the admission of black and white photographs instead of the original color versions constituted plain error. But Daniels has failed to show that the trial court abused its discretion in prohibiting cross-examination about a collateral matter, that the testimony in question was actually false, or that the admission of the photographs affected the outcome of the trial. Accordingly, we affirm.

1. *Facts and procedural posture.*

Construed in favor of the verdict, see *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that on September 28, 2012, Lekeidra Taylor was walking to her apartment from a bus stop after work when Daniels drove slowly past her in an SUV. Daniels parked his vehicle in the apartment complex, got out of it, and forced Taylor into the back seat of his vehicle. Taylor pushed Daniels away and got out of the vehicle, but during the struggle Daniels took Taylor's wallet from her. Taylor used her cell phone to take a picture of Daniels holding her wallet and a picture of the license plate on his vehicle. Daniels eventually left the scene in his vehicle and Taylor called 911 to report the incident. Police apprehended Daniels later that evening.

The jury found Daniels guilty of robbery by force and the trial court imposed a 20-year sentence, with five years to be served in confinement and the remainder to be served on probation.[1] Daniels appealed, and this court granted his motion to remand the case to the trial court to consider the admission of photographic evidence and whether the state had knowingly elicited false testimony from the victim. After

---

[1] The jury also found Daniels guilty of hindering a person making an emergency call and driving with a suspended license, but the trial court set aside those verdicts due to insufficient evidence. The jury returned not guilty verdicts on charges of attempted rape and false imprisonment.

a hearing on remand, the trial court found no errors and denied a new trial. Daniels filed a motion for reconsideration, which was denied, and this appeal followed.

2. *Prior inconsistent statement.*

Daniels contends that the trial court erred in prohibiting him from impeaching the victim with a prior inconsistent statement. We review that ruling for abuse of discretion and find no such abuse. See *Thomas v. State*, 293 Ga. 829, 833 (4) (750 SE2d 297) (2013); *Cruz v. State*, 347 Ga. App. 810, 813 (2) (821 SE2d 44) (2018).

On direct examination, Taylor testified that she had met Daniels several months before the robbery while she was working at a Kroger grocery store. While explaining that at the time of the robbery she no longer worked at Kroger but was working at a hotel, Taylor testified: "I basically left Kroger because I wanted to . . . get into the healthcare field. And when it really wasn't going well for me, I still had my CNA [certified nursing assistant] at that time, I had finished job corp[s] and it was kind of hard to find a CNA job, so I tried looking for other jobs and that's when I went into the [hotel] position[.]" On cross-examination, defense counsel sought to impeach Taylor's testimony that she had left Kroger to get into the healthcare field by asking her if the reason she had left was because she had been caught shoplifting. Taylor replied: "No, I wasn't caught shoplifting."

3

The state objected to the line of questioning as irrelevant. Outside the presence of the jury, defense counsel produced a statement that Taylor had purportedly written upon resigning from Kroger. Counsel read the following statement into the record:

> I did a transaction for a refund that I put on a gift card that I didn't buy. I didn't receive as a gift. I kept the gift card and used it. I've also used another employee's Kroger card to get his employee discount. Earlier this week, I did another transaction, the same as one month ago and did the same thing. I'm willing to pay back the money that I put on the gift cards and the money that was discounted to me from the employee Kroger card. As of March 31, I will resign from Kroger.

The trial court sustained the state's objection and prohibited use of the statement for further questioning about Taylor's resignation from Kroger, finding that it was irrelevant and collateral to the issues in the case.

(a) *OCGA § 24-6-613 (b).*

"Georgia's new Evidence Code took effect on January 1, 2013, [approximately 10 months] before [Daniels'] trial began. On the issue of admitting extrinsic evidence of a witness's prior inconsistent statement, OCGA § 24-6-613 (b) substantially adopted the language of Federal Rule of Evidence 613 (b)[.]" *Hood v. State*, 299 Ga. 95, 98-99 (2) (786 SE2d 648) (2016).

> Under OCGA § 24-6-613 (b), extrinsic evidence of a witness' prior inconsistent statement may be admitted so long as the witness is first afforded an opportunity to explain or deny the prior inconsistent

4

statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require.

*Brewner v. State*, 302 Ga. 6, 16-17 (V) (804 SE2d 94) (2017) (citation and punctuation omitted).

Because this code section substantially adopted the federal rule, we look for guidance to the decisions of the federal appellate courts, which have "held – as Georgia courts did under our old Evidence Code – that prior inconsistent statements cannot be introduced through extrinsic evidence if they are irrelevant or collateral to the subject matter of the case." *Hood*, supra at 99 (2) (citations omitted). "Thus, although aspects of Georgia's Evidence Code dealing with prior inconsistent statements used to impeach have changed, the principle that such statements may not be introduced to impeach a witness on collateral matters remains intact." Id. (citation omitted). "A matter is collateral if the facts referred to in the statement could not be shown in evidence for any purpose independent of the contradiction." *United States v. Bordeaux*, 570 F3d 1041, 1051 (V) (8th Cir. 2009) (citation and punctuation omitted).

In this case, the trial court correctly ruled that Taylor's resignation from Kroger, including any purported reason for resigning, was a collateral matter since

5

"the testimony [Daniels] wished to elicit from [Taylor] regarding [the reason she left a job several months prior to the robbery] was irrelevant to the issues to be considered by the trier of fact[.]" *Wynn v. State*, 272 Ga. 861, 862 (2) (535 SE2d 758) (2000). The trial court thus did not abuse its discretion in refusing to allow Daniels to introduce a prior statement to attempt to impeach the victim on a collateral matter. See *United States v. Blackwood*, 456 F2d 526, 531 (2nd Cir. 1972) ("A witness may be impeached by extrinsic proof of a prior inconsistent statement only as to matters which are not collateral, i. e., as to those matters which are relevant to the issues in the case and could be independently proven.") (citations omitted).

(b) *OCGA § 24-6-608 (b).*

Daniels also argues that under OCGA § 24-6-608 (b) the trial court erred in curtailing further cross-examination about Taylor's alleged prior bad acts as shown by her written resignation statement. OCGA § 24-6-608 (b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime as provided in Code Section 24-6-609, or conduct indicative of the witness's bias toward a party *may not be proved by extrinsic evidence*. Such instances may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness[.]

(Emphasis supplied.)

6

Under the plain language of this statute, the trial court properly refused to allow Daniels to use extrinsic evidence of the prior statement for the purpose of attacking Taylor's character for truthfulness. See *Gilmer v. State*, 339 Ga. App. 593, 599 (2) (c) (794 SE2d 653) (2016) (Under OCGA § 24-6-608 (b), "trial counsel clearly would not have been permitted to introduce extrinsic evidence of the [witness'] arrest for perjury[.]"). And "[b]ecause OCGA § 24-6-608 (b) places the decision whether to admit specific instances of conduct within the trial court's discretion, we will reverse the trial court's ruling only on a clear abuse of that discretion." *Gaskin v. State*, 334 Ga. App. 758, 762 (1) (a) (780 SE2d 426) (2015) (citation omitted). Indeed, trial "court judges retain wide latitude to impose reasonable limitations on cross-examination based on concerns about . . . prejudice, confusion of the issues or interrogation that is only marginally relevant." *United States v. Saunders*, 166 F3d 907, 920 (7th Cir. 1999) (citation omitted). Here, we cannot say from the record before us that further inquiry into the reasons why Taylor left her prior job was mandated or "that the trial court abused its discretion in precluding any such cross-examination under the circumstances[.]" *Douglas v. State*, 340 Ga. App. 168, 173 (2) (796 SE2d 893) (2017). See also *Williams v. State*, 332 Ga.

7

App. 546, 549 (1) (b) (774 SE2d 126) (2015) (no error in trial court prohibiting cross-examination under OCGA § 24-6-608 (b)).

3. *False testimony.*

Daniels claims that his conviction must be reversed because the testimony of Taylor discussed above – that she left her job at Kroger because she wanted to get into the healthcare field and that she was not caught shoplifting – was false and the prosecutor failed to correct it. The claim is without merit.

> A defendant's right to due process is violated when a prosecutor fails to correct the false testimony of a government witness. To obtain a reversal on the grounds that the government failed to correct false testimony, the defendant must establish that: (1) the contested statements were actually false[;] (2) the government knew the statements to be false; and (3) the statements were material. To succeed on [such a] claim, the defendant must establish that the witness committed perjury. Simply showing a memory lapse, unintentional error, or oversight by the witness is insufficient. False testimony is considered material if there is any reasonable likelihood that it could have affected the judgment of the jury.

*United States v. Clarke*, 442 Fed. Appx. 540, 543-544 (II) (11th Cir. 2011) (citations and punctuation omitted). See also *Napue v. Illinois*, 360 U. S. 264, 269 (79 SCt 1173, 3 LE2d 1217) (1959).

Here, Daniels has not established that Taylor committed perjury. See OCGA § 16-10-70 (a) ("A person to whom a lawful oath or affirmation has been

administered commits the offense of perjury when, in a judicial proceeding, he knowingly and willfully makes a false statement material to the issue or point in question."). Daniels has made no showing that Taylor's testimony on direct examination that she "basically left Kroger because [she] wanted . . . to get into the healthcare field" was actually false. As the trial court recognized, a person may have more than one reason for leaving a job, so even if "her stated reason for leaving Kroger was not the whole truth of the matter, [it was] not necessarily false." While there may be conflicting evidence as to why Taylor left her job at Kroger, as our Supreme Court has explained, "conflicting evidence alone does not support a showing that the [witness] was necessarily being dishonest . . . or that the [s]tate knowingly presented false testimony." *Greene v. State*, 303 Ga. 184, 188 (3) (811 SE2d 333) (2018) (citations omitted).

Likewise, Daniels has not established that Taylor's testimony on cross-examination that she was not caught shoplifting was actually false and rises to the level of perjury. As Daniels conceded at trial, it is undisputed that there was no shoplifting conviction. Moreover, the written resignation statement upon which Daniels bases his claim of shoplifting indicated that Taylor "did a transaction for a refund that [she] put on a gift card that [she] didn't buy [or] receive as a gift. [And

9

that she] kept the gift card and used it." The statement, however, does not clarify where the card was from or to whom it belonged, how Taylor obtained it, and how it was used. While that statement apparently shows misuse of a gift card, given the lack of specificity about the essential elements required to prove the offense of shoplifting, it cannot be said with certainty that such a crime occurred. See OCGA § 16-8-14 (a) (theft by shoplifting). Even if we assume that the acts in question could form the basis for a shoplifting charge, there is no evidence that any such charge was ever made or that Taylor knew that her conduct might be construed to support such a charge when she denied having been caught shoplifting. Under the circumstances, Daniels has not shown that the testimony was false since there are alternative explanations for the discrepancy. See *Clarke*, supra at 544 (II).

4. *Photographs.*

Daniels claims that the trial court violated the best evidence rule by admitting two black and white photos – one of his license plate and one of him holding the victim's wallet – because the original photos were in color. Daniels did not object to the black and white photos at trial, so we review their admission under the four-pronged test for plain error. See *Gates v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772)

10

(2016) (evidentiary rulings not objected to at trial are subject to appellate review for plain error).

> Under this four-pronged test, there first must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Patch v. State*, 337 Ga. App. 233, 242 (2) (786 SE2d 882) (2016) (citations and punctuation omitted).

We assume for the sake of argument that Daniels can show that the admission of the black and white duplicates of the original color photos meets the first two prongs of the plain error test. But see OCGA § 24-10-1003 ("A duplicate shall be admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original; or (2) A circumstance exists where it would be unfair to admit the duplicate in lieu of the original."); *Pierce v. State*, 302 Ga. 389, 397 (2) (807 SE2d 425) (2017). Nevertheless, he has not satisfied the third prong of the test, requiring that he demonstrate that the error affected the outcome of the trial

11

court proceedings. *Patch*, supra. See also *Henderson v. State*, 320 Ga. App. 553, 562 (8) (740 SE2d 280) (2013) ("[P]retermitting whether the first, second, or fourth prongs were satisfied, [appellant] failed to satisfy the third.").

In this regard, Daniels makes no argument concerning the photo showing his license plate. Instead, he only argues that he was harmed by the black and white photo of him allegedly holding the wallet. He claims that the color version of that photo shows that the item in question was black and white with some purple on it, whereas Taylor described the wallet to police as black with different colored stars or butterflies on it. He also claims that the color photo supports his theory that the item in question is not the victim's wallet but is his cell phone.

However, contrary to Daniels' arguments, after the evidentiary hearing on remand, the trial court expressly found that "there appears to be no significant difference between the [p]hotograph introduced at trial and the color version thereof; it is simply a copy of the color version." Moreover, the state showed at trial that Daniels' cell phone was plain black with no white or other coloring on it. As noted above, Daniels' own description of the color photo is that it shows him holding an item with white and purple on it, rather than a plain black item, such as his cell phone. So it appears that he actually may have benefitted from the fact that the color photo

12

was not admitted since it may have undermined his defense that he was holding his cell phone in the picture. "Under such circumstances, we find that [even if] the introduction of [the black and white photos] was erroneous, that error did not likely affect the outcome in [this] case." *White v. State*, ___ Ga. ___ (3) (Case No. S18G0365, decided February 4, 2019) (citations omitted). See also *Smith v. State*, 299 Ga. 424, 431-432 (2) (c) and (d) (788 SE2d 433) (2016) (erroneous introduction of evidence was harmless where aspects of the evidence appeared to have aided the defense). Accordingly, Daniels cannot show that the admission of the photos amounted to plain error affecting substantial rights. See *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) ("Satisfying all four prongs of [the plain error] standard is difficult, as it should be.") (citations and punctuation omitted).

*Judgment affirmed. Markle, J., concurs and Rickman, J., concurs in Judgment only.**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY, COURT OF APPEALS RULE 33.2 (a)**.